I represent the Berkshire Environmental Action Team and 16 citizens. The citizens are requesting that this court allow them to complete their ongoing participation in the Mass Department of Environmental Protection proceeding, which is evaluating Tennessee Gas Company's application for water quality certification. Tennessee Gas, in its prior pleadings at the District Court, is trying to shut down the ongoing Mass Department of Environmental Protection process. I have three points on behalf of the citizens that I want to make here today. First, the National Gas Act, Section 717RD1, requires a final order or action before there is appellate review. Does it? Does it use the term final order? It does not. What it requires is the state act upon a certification application within a one-year period. There is no time limit in 717RD1. No, no, but the act requires that the state act on the certification application within one year, doesn't it? There is a separate provision from 717RD1 which requires that the state act. It doesn't necessarily require the state to complete. No, no, but what's the purpose of the provision requiring the state to act? Doesn't it obviously reflect the intention of Congress that the state not hold up the application process, that it proceed with due diligence, do its business, and get out of the way? Yes, there is a long-standing legislative history that evolved when 717RD1 was passed in the Energy Policy Act of 2005. That history did reflect congressional intent that there be an expedited process to approve the permanent construction of pipelines and other energy infrastructure. And as part of that, there was also a recognition in a separate statute that there be a timeline of one year for an agency to act. If you construe an agency acting as meaning all the agency has to do is take some step towards fulfilling its responsibilities, then the timeline is meaningless because the agency can commence its proceeding within the one-year period and complete it at its leisure three, four, five years down the road, which defeats the purpose of the statute. The purpose of the statute is to compel a state to act within one year. And Massachusetts did act within one year. And they did act within one year. And there's a case law that suggests that that's not a requirement that there be a final permit within that one-year period of time. But it could just take forever. In other words, it would just take a few steps. I think your difficulty is you're trying to thread quite a needle here. As I distilled on your brief, you're arguing on the one hand that the command that the agency waives its right to participate unless it acts in one year, that we should construe act as that it has acted here in this case, you would argue. It's done enough to act. And yet under 717RD1, you want us to hold there is yet no action of a state administrative agency that would trigger our review. But on the one hand, yes, the DEP acted. But on the other hand, no, there has been no DEP action that is reviewable. That's a fine thing to... I understand the question. I understand the notion that we're threading a needle here. Isn't it only one of those two issues that is actually presently before us, which is has there been an action of a state administrative agency under 717RD1, such that we're the only place it can be reviewed? That's the first question, and that was the first question I really was looking to answer, appreciating that there's this tension with when the action actually has to happen, because the first question and the primary question for this court is what action means, because it's not defined in 717RD1. And as we said in our brief, and as I'm sure this court is aware, we're relying on the court in Columbia. We think they got it right that 717RD1 requires a final order before it is right here. And we're asserting that the determination underway at the Mass. Department of Environmental Protection is not final. It's part of their process, their ongoing process, and there's ongoing proceedings. There's a hearing scheduled for next week, and therefore they are acting, but it's not final. So the answer to the question is we think and submit that this court has no jurisdiction, it's not right to interrupt the Mass. DEP, and yet the DEP is correct in continuing to its process, appreciating that it acted in its initial interpretation. I think you're saying as long as they can drag their feet for 28 years, whatever the... Well, Your Honor, and there are... Well, two years. There are cases that suggest that there, and we didn't say it in our brief, and I can provide them, I don't have them in mind right now, but the two years seems to be the timeline where courts appreciate that if you haven't acted in a way that is effective, you might have taken too long. There's no authority... But there's nothing in the statute, it's the only thing Congress said was you have to act in one year. And our position is, as you know, that they did act. So you've said that that box has been checked off. It is. And there's nothing else in the statute that imposes any timeline, notwithstanding Congress was obviously trying to put an end to these things. We think that there's nothing in, yes, there's nothing, there's no statute that... And you suggest maybe we could pick out of the air two years. Well, there's case law that... Well, some case law picked out of the air two years, but there's nothing in the statute. There's nothing in the statute that suggests that act means final either. No, but there is a provision in the case law that says if you don't act within one year, you waive, which again indicates an intent of Congress that they want the state to get in and out. I think, if I can take a moment, I want to clarify this by going back and reviewing the legislative history a little bit, which goes to the congressional point of why we got to 717RD1, why we're even talking about a need for an expedited review, because I think that's important. Back in 2005, there were a number of construction plans, power plants, infrastructure projects that were being held up by the states. And Congress was concerned at that time that the process by which the states were undertaking their appeals and their reviews was keeping necessary projects that were permitted under the Natural Gas Act from going forward. And what they did was... One of the commentators said death by a thousand cuts. And so what they did was they passed 717RD1 as part of the EPAC, Energy Policy Act of 2005, with the notion that if they cut out the appeals to the state courts, that that would remediate the backlog and that would make the process more expeditious and that would eliminate a problem that they identified in passing the act. So that's what they did. And all the courts that have interpreted, and we cited, I believe, the Iowa court and the district court in Pennsylvania, they all determined that as part of that process there needed to be, and could be, and should be, a final agency determination before there was any appeal. Assuming that, you say, OK, act means one thing, action means another. Congress used both terms, therefore they presumably have different meanings, and you've supplied those meanings. Given your position, let me go back to the question that my brothers have been asking, and that is, let's assume we get to the point at which, yes, the agency has acted within a year. It has become something. But it drags and it drags and it drags, and let's say three years go by. Is there anything the applicant can do except go before the department and plead? Is there any way the applicant can, in fact, demand an expeditious resolution on its application? There's a couple things, and that's a great question. The applicant could have, in this case, asked for an expeditious determination at the Mass DEP, and that would have accelerated the review period. What if the Mass DEP said no? Well, it wasn't even an ask. But you can't say that would have guaranteed. It wouldn't have guaranteed anything. It wouldn't have been a step. But I think the thing that is most important here is we're not talking about two years. We're not talking about two years. No, but I want you to answer my question, which is about three years. Let me ask you this. Let's assume the agency dragged things on and we have now passed the three-year point. Could the applicant go into a district court or, for that matter, into a state court and say, make them resolve this within a reasonable time. The object of this statutory scheme under the Gas Act is to keep this sort of thing from happening. We're not appealing anything at this point. We just want them to get in gear and resolve something. Would there be a means of demanding that kind of action, that kind of expedition by court order? In the Natural Gas Act, there is a provision that allows the applicant, if there is delay, to seek relief in the District Court, sorry, the Court of Appeals District of Columbia. They can go down there and say it's taking too long. And as part of this conversation, what I wanted to just emphasize, and when I said it's not three years or 25 years, the DEP is scheduled to make a decision on this on April 3rd. Back to Justice Souter's question, because I'm still having a real problem with that. Congress has said you have to act within one year. One simple way to read that is the person is supposed to have their permit or have a permit denial within one year. You can't drag it out. The other way to read it, you're suggesting, is that the agency just has to do something substantive, start acting in some way. If that interpretation is correct, then it seems to me we have no statutory language whatsoever to put any end to the time period running. We've thrown out the one year because that's been checked off. And so we're back to Justice Souter's question. Suppose they take three years and then you come to us or any other court and say, I want to order that they go faster. You've got no standard in any legislation to point to that would guide a court in doing that, having once abandoned the one year that Congress talked about. That's where I'm having a problem. The statute is ambiguous. It doesn't define act on. So that is a problem. Right, but one interpretation of it solves my whole problem. Your interpretation introduces yet this whole additional problem of essentially having to answer Justice Souter's question by saying, you know, there's no guarantee they could get anybody to do anything after 3, 10, 20, 30 years. They can go under the Natural Gas Act. There's a specific provision that allows them to go to the United States Court of Appeals, District of Columbia. Could that provision have any use except in the very circumstances that we're questioning about? In other words, is there reason to believe that that provision for jurisdiction to go into the D.C. Court of Appeals and say make them speed it up has any use other than responding to our question? It will respond to your question. I suspect it has other uses. I can't put my finger on it. How could the D.C. Court of Appeals order a state environmental agency to speed up its review? Under what authority? It could actually make the determination that time's up. Based on what criteria? Based on that it's taking too long and based on... But what is too long? Well, it's a judicial determination because the statute doesn't say specifically... Only if you put the one year to one side. It says you need to act and we go through this in our reply brief and essentially there's not a lot of case law and it's an ambiguous statute. We think because of the fact that... If I may? Yes, you may. We think because of the fact that in this particular circumstance the Department of Environmental Protection has taken the first step, has acted on this certificate and a final decision is due in a couple of months that the other important consideration here of allowing an agency to make a determination of considering that an agency process may create some delay because it needs to continue its review and an agency process in further consideration may actually create more efficiency. Those things outweigh or at least are equal in consideration, especially when you have a statute that doesn't define, act on. Those other considerations weigh in any determination. Thank you. Thank you. Good morning, Your Honors. I'm Matthew Ireland representing the Massachusetts Department of Environmental Protection in this section. If it pleases the Court, I would like to start off with a very important distinction that addresses many of the points that have just been raised and that's the difference between the statutory language that requires an act within one year or a waiver. That provision comes from the Federal Clean Water Act, not from the Natural Gas Act. So we're talking about two different statutory schemes that have very different purposes here. So if you look at the... What's the purpose of the Clean Water Act? Because as I understand, the purpose that you're advocating is essentially that Congress did, as a practical matter, nothing. Because you want us to say that all Congress said is you need to take some step with respect to an application and then you can sit on it forever. No, I think that if you look at the legislative history, there has to be a yes or no determination made or there's waiver. But it's important to look at the full statutory language in the Clean Water Act. This is 1341. The purpose of this is so that a federal permitting agency, which needs to rely on a state certification so that that state certification, the water certification at issue here, can be incorporated into a federal permit. It's to allow the federal permitting agency to incorporate that decision. And if you look at what happens in the normal course, again, stepping aside from the natural gas context, which is a much more limited universe, what happens in the normal course is that even if a federal agency relies on that initial yes or no, there still is a procedure. The state review procedures still go forward. That includes any further administrative review that has to be exhausted, and it includes state judicial review. But there's no reason why further state administrative procedures can't go forward here. Even if we treat the one-year period act on as meaning what one would logically think it means, because we said in Puerto Rico Sun Oil Company that if state administrative procedures produce further refinements or comments after the expiration of the one-year period, the federal agency can, isn't required to, but can consider those in its discretion. So the state, further state proceedings, should the state wish to set them up, aren't wasted. They still get factored into the mix to the extent that they have persuasive power. That's true, and that would be the normal course, and that does happen all the time. But again, keep in mind that's the purpose to allow a federal permitting agency to move forward with their federal permit in incorporating the state water quality certification. But if you look at what's at issue here is 19D of the Natural Gas Act, again, it's a very different purpose. The purpose of that is to expedite review, clearly. It doesn't use the word act. It's action or order, and under a Supreme Court precedent, even if the word final isn't thrown in the mix, it's very clear there's a very strong presumption that that has to be final agency action. There's nothing in the text of 19D of the Natural Gas Act that shows any intent to short-circuit an ongoing state administrative decision-making process. Except that if I understand your argument, you, in effect, are saying the requirement of final agency action would be necessary for this court to have jurisdiction to review the state action, and yet the federal permitting agency can go ahead and incorporate or not incorporate as it sees fit. And that, in effect, leaves the party who is dissatisfied without an appeal with respect to the state action, while the federal action can go forward. Could Congress have intended that? I think so, because what we're talking about are two different things. There's a state certification, but that also is incorporated into the federal permit. If there was going to be a challenge to the federal permit, that would be a separate action that would be challenging the other things in the federal permit. The federal permitting agency... So, in other words, you're saying by challenging the ultimate federal permit, you have an opportunity to challenge, in effect, the state action, if incorporated there, which you did not have a chance to appeal before because there was no jurisdiction in this court. Is that the way the scheme works? No, I think that if you're attacking the separate federal permit, you're attacking that permit. The federal agencies have no discretion in terms of what they're going to incorporate in the state certification. They have to put that state certification in whole. And that's based on state law, both state procedural law and state substantive law. So attacking that separate federal permit would be a separate action. That still, if someone is going to attack the state certification under the National Gas Act, that can still come to this court for a separate purpose. But, again, this court would benefit from the agency decision-making process being finalized. But it cannot come to this court if we were to hold that act means final action, and there was no final action here, therefore there is no jurisdiction to appeal here. And the only way on that assumption that the state action, no matter how erroneous, could ever be, in effect, reviewed, would be by saying that the federal agency acted unreasonably and should not have accepted the erroneous state adjudication, which itself was not subject to appeal. Is that correct? No, I think what we're saying here is that there can be an attack on the separate federal permit. However, an attack on the state certification will come for this court under the Natural Gas Act, but only after the agency decision-making is final. And if the appeal does come here, and we find for the appellant, does that, therefore, entitle the winning party, the appellant, to go back to the federal agency under the Natural Gas Act and say, look at it again. They just knocked out the state action. Yes, and that happens all the time when you're not dealing with the Natural Gas Act context. I mean, if a state appellate court knocks out a certification and a federal agency, a federal permitting agency, has already relied on it, then you've got that same conflict. And that conflict does happen, and it happens much more frequently than the very narrow, limited jurisdiction cases under the Natural Gas Act. So that is not alone a reason to have this court review a non-final decision at this point. I mean, there is an opportunity to harmonize those two. Let's try to be concrete here. So what's wrong with this scenario? In this particular case, we hold there has not yet been action of a state administrative agency because the Massachusetts DEP is still working within itself to reach a decision. So, therefore, review is premature. Simultaneously, because one year has gone by, FERC could go ahead and issue the permit and deem that Massachusetts has waived its right to automatically have its water quality certification determination followed by FERC, and it would then be up to FERC at a future date when the DEP finishes. That could be a challenge to us at that point. Whether or not it's a challenge to us, and however we review it, would be discretionary with FERC as to whether to adopt those water quality determinations. That seems to be a coherent way that this all works. Well, in this particular case, it wouldn't be FERC necessarily. What it would be is the U.S. Army Corps of Engineers who would be incorporating it. And actually, in terms of waiver, the U.S. Army Corps of Engineers, in a normal course, would rely on that initial yes or no. And in this case, they actually have stated that they intend to rely on that initial decision from July. However, there are procedures where they can modify the permit if the continuation of the state administrative process does end with a different result. What puzzles me is why your client, given this regulatory scheme, why your client would set itself up that it would take more than a year to issue an action that we can review on a water quality determination. Because it seems to me, unless we were to adopt the, well, can I kind of ignore the one-year thing and say you can start the process, then you're automatically putting Massachusetts in a position where it's waiving its right to insist that its water quality determination be adopted. Well, we've cited cases in our brief. Every court that's looked at waiver has held that if there is a yes or no decision, that satisfies the act under the Clean Water Act, and there's no waiver. But you must admit there's some substantial risk that a court of several judges is probably going to say you can't have your cake and eat it too. You can't say there's not yet an action that can be reviewed, and yet we've acted to solve the one-year, and by the way, they actually don't have a certificate necessarily that they can use. It could be a no, and yet they can't appeal it. Well, this does, again, if you step aside from the natural gas context, this does come up quite a bit, and no court has ever ruled that. And it's clear, and we've cited cases where even though the federal agency relies on that initial yes or no, the state process continues, and it can change the permit. So I think that if you're right about that, though, suppose it's a no. Suppose here the DP officials that sent the letter had said no. What you would be saying is that would be binding FERC or the Army Corps would adopt that, and yet there could be no appeal to us other than no. Well, no, if there's a no, again, it would be the same thing. It would be if it's a no. But how could they appeal it if it was just a no right now and the DEP itself hadn't finally signed off on it? Well, it would be the same circumstance. If there was a no, if it was not challenged by any group, that would be a final decision. If it was a no, the applicant obviously challenges the no to the full board. And it would come to this court once that decision-making process is over. So that could be 10 years. It's not going to be 10 years. Well, it could be more than a year. Typically it takes six months to a year. Roughly here, the decision-making process is almost over. It could be more than a year from when the application was filed. In fact, your client is set up so it will almost necessarily be more than a year. That's true. But, again, there's nothing in the Natural Gas Act that shows that there's any intent to have a super-expedited process. And this is where Section 19d 2 and 3 really are instructive because that anticipates agency delay, as we've discussed here. And there the D.C. Circuit can order an agency that's dragging its feet to do its duty. But, again, the statutory language in 19.2 and 3 talk about the court, the D.C. Circuit, ordering and setting a deadline. But that deadline has to be reasonable. In other words, it recognizes that the agency, even if it's been dragging its feet, even in the face of delay, still has to be given a reasonable opportunity to do its job. And I think here that's even more important where we've got a water quality certification that's very fact-intensive and that's required by a separate federal statute. Let me ask one legislative history question. Before the one-year language was put into effect, was there any evidence that state agencies weren't even opening their mail for more than a year when they got an application? In other words, didn't even look, didn't do anything that could be described as an act. Is that what they were doing? Well, I don't know if there was so much data. I think the concern was that a state that isn't interested in a project would just take too long. It would drag its feet and basically run out the clock where a project basically was killed, as said before, by too much time going past. And that was certainly part of the intent with Section 1341 Act within a year. And, again, the main point was just so the federal agency can incorporate that water certification in a federal permit. Thank you. Thank you. Good morning. Jim Messinger representing the respondent Tennessee Gas Pipeline Company. We are asking that the court accept subject matter jurisdiction and rule that it, not the EPA or the department, has jurisdiction and affirm the water quality certification. And I think I would like to, in light of the questions of the court and the arguments of counsel, deviate a bit from my outline and just go directly to some of the issues. On the issue of the review of the water quality certification, I'd just like to start with the act. Section 19D states that this court, meaning the United States Court of Appeals in the jurisdiction where the pipeline is located, has original and exclusive jurisdiction over any order or action issuing, denying, or condition a permit or license required by law, required by federal law. There's no dispute among the parties that this water quality certification is a permit or license required by federal law. And if you look at page 293 of the appendix, the document is called water quality certification. It states in the body of the document that it's been granted and conditioned. So that's the statute. And under the clear terms of the statute. But one of the conditions is that it's of no effect in terms of what anyone can do  and until the time for filing an appeal has expired. That's one of the conditions. But my point is under the statute, there are 47 conditions in terms of. The day your client got that piece of paper, it couldn't do anything. I agree with that. And it's in many respects no different than any other final judgment from a district. Why shouldn't it be up to Massachusetts, its state agency, to decide what procedures it wants to follow, what internal presumptions, how many people it wants to allocate preliminary decisions to? It can do it whatever way it wants. And when the agency then issues a decision, we review it. And it's got a little thing over here that if it doesn't argue in one year, do it in one year, then FERC can just deem its right way. Let me respond this way. The legislative history of Section 19D, which is quoted extensively in our briefs, the purpose of Section 19D, which was enacted in 2005, was to shorten the time frame for appeals. It did that by giving the U.S. Court of Appeals exclusive original and immediate jurisdiction over the issuance of a permanent license. And the whole reason for that, the whole context of that, is that when a pipeline is certified by FERC, it has time-sensitive deadlines to construct. And there's already been a determination that it's in the public need. Here, by the way, this project is to benefit Connecticut residents who have issued their 401. So is New York. This is the state that's holding it up. And the purpose, we will not be able to meet these deadlines given the protracted nature of these appeals if we have to wait in part because of the condition you're referring to. We would have to run the risk. Once the one year ran, why didn't you just go to the federal agency and get them to move forward deeming it waived? The procedure under Section 19D, once you get a water quality certification, and it was the petitioners who appealed it. It was granted to us. They are the ones who filed this petition in the court. You have the option, if you lose, of appealing it. They did. We're here today responding to that. So that's the context. We think there was a water quality certification issued on the 365th day, but the satisfied Section 19 did. They're the ones that filed the petition. But in answer to Judge Gadd's question, isn't it true that you also went to the federal district court to secure some relief? Yes. We sought to enjoin the state proceeding that was going on because we thought this court had exclusive jurisdiction over the water quality certification. You also argued the one year bar, didn't you? Didn't you also argue the one year waiver? We've argued the point that you've raised, that if this certification is not ripe for review now, and is not the kind of action that can be reviewed, then necessarily waived. That's really to strengthen the point that this is an action that's reviewable. I'd just like to point the court to two cases. In the Middle District case, which is cited extensively in our brief, 2013 Middle District of Pennsylvania case, Pennsylvania made the same exact arguments that are being made here. They said there was not a final permit. But what you're saying is you're saying, it seems to me there's somewhat of a federalism here. The states are being given a right to make these water quality determinations, and the federal agency is going to be bound by that. And Congress usually doesn't step in and tell the state, within its own government, how it has to go about making a decision and allocate it. Here it perhaps told that he had a time limit. But what you really seem to be saying is a state agency can't, in its discretion of its state as a sovereign entity, decide we're going to have a two-step process where some of our people make a tentative conditional recommendation, and that will be the rule. But if somebody objects to it, the agency won't sign off on it until it's heard it de novo. You're saying states literally cannot do that. I am. And why would Congress? That's a big thing for Congress to have dictated that. I'm sorry. The context of this is the Natural Gas Act. It's interstate pipelines. It's the only way to transport natural gas. There are projects of time-sensitive deadlines. But let's assume the one-year waiver applies. That fully takes care of your timing consideration. In fact, perhaps more than your argument would because it sets an absolute deadline. The one-year constitutes a waiver, but the Section 19D, and again, the Middle District of Pennsylvania, basically said once you issue the permit, even if you consider it an initial order, that's what the court there said, that is immediately reviewable by the Court of Appeals. And that is necessary to move these projects because if you just practically. But it's not necessary if the one-year bar applies, the one-year waiver rule applies. It is necessary to have the immediate review because you need to have the water quality certification effectively to get your 404 permit. You need that to begin construction. These projects get certified. There's a demonstrated need for the natural gas, in this case in Connecticut. There are deadlines imposed, in-service deadlines. In this case, we have a deadline of March 2018. But if, I think I understand what you're saying, but if the one-year rule applies, don't you wind up in the same place, whether you say the initial certification is an order which grants us the certification that we need and that's immediately reviewable, should anyone timely petition for review, or whether you say that initial order is meaningless because of its conditional nature, but once the one-year period elapses, the bar takes place and there is no further role for the state in that certification process. Don't those two things put you in the same place? I understand that it's potentially different. When you've indicated that the state proceeding can go forward, I would urge the Court to look at the Third Circuit 2016 case. They addressed what happens if a state doesn't issue a water quality certification in one year. They analyzed it in context of the FERC and the Natural Gas Act. They said if you don't issue in one year, the condition in your FERC certificate to obtain a water quality certification is deemed satisfied, the applicant is relieved of the obligation entirely to get a 401 certification. Depending on how you analyze, if the waiver context there was applicable, which we think it should be, maybe it gets you to the same place. But if that's correct, why in the world would Congress have taken the extraordinary step of intervening and telling the states actually how they must organize their administrative agency and decision-making within that one-year period? It's quite a step for Congress to have taken without saying so. They're not telling you how to organize. It would be entirely conceivable to have an initial permit and appeal within a year. They're not telling you how people to do it. What they're saying is once you issue the permit, and again I urge the courts to look at the Middle District case. This has been raised in the Second Circuit case. Once you issue that permit, because of the context of the legislative history, the Court of Appeals has immediate jurisdiction. That's to move up and expedite the process. The way that it's expedited, the way that the time to appeal is shortened, is to give the federal courts jurisdiction after the permit is issued. There's no question here a permit has been issued. You can look at the record, and it's called Water Quality Certification. It uses the word granted, and it's been a permanent issue. So let me approach it from this point of view. One of the motivating purposes of the original amendment to the Act was to get state courts out of the decision line and to make these permit certifications or denials directly appealable to the Court of Appeals. So that you're saying, in effect, that that same rationale even keeps state administrative review out, that a state can structure its procedures to have different levels of review as long as they're completed within one year, and as long as the permit doesn't issue until the end of that process, but that's not what Massachusetts did. I actually meant to say that the case law makes it clear. One of the questions the Court asked was whether there's an exhaustion of administrative remedies requirement. That was in the scheduling order. And the cases have clearly indicated that there is not an exhaustion of administrative requirement. The Second Circuit has denied the requirement. Connecticut argued there should be an exhaustion. In the Middle District, the Pennsylvania case, same thing. Every state that's looked at it has said that you do not have to exhaust administrative remedies. You don't have to exhaust the appeal. Once the permit is issued, it goes to the U.S. Court of Appeals. And here what's, I think, important in terms of your layering our initial recommendation, this permit, in the absence of the appeal, would be binding. It's like any final judgment of a district court. And I think that's the context. And I urge the Court to, first of all, It's actually not because any final judgment, some final judgments you can act on right away, right? Well, if it, yes, yes, yes. In certain cases, certain judgments can be acted on. Some will be obviously stayed pursuant to the, it depends. You're correct. Well, my point is that if nobody appealed this, it would set legal rights. And that's an important distinction. And once that happens, under the legislative scheme, the purpose of the Natural Gas Act is to shorten the time frame for appeal. And the mechanism is once you have a permit that sets legal rights, it goes to the federal courts. And this is all, again, in the context of, you know, we have a serious real problem here of in-service deadlines and moving forward with the construction of a pipeline. By the way, this pipeline is for the benefit of residents of Connecticut, not Massachusetts. Thank you. Thank you. Final question. Counselor, your ultimate concern, obviously, is to get the job done, expeditiousness. What do you say about the argument, which we heard earlier, that if, in fact, we take the position that the order's got to be a final order, that any action, including a preliminary one within the one-year period, satisfies the state's obligation under the duty to act under the Water Act? And the state, nonetheless, drags its heels. Their answer has been there is jurisdiction in the D.C. Court of Appeals to issue an order in effect in the nature of mandamus, saying get moving, wrap it up. Isn't that a sufficient answer to the concern about foot-dragging on the part of the state? Respectfully, that wasn't raised in any of the briefs. The first time I've heard that argument is today. Well, maybe because we've been asking questions that go to it. I mean, if you wish to follow up. I'm not familiar with that procedure. There might be. I'm not familiar with it. It wasn't raised in any of the briefs, and I'm not prepared today to answer the question. I'm sorry. Well, I mean, counsel who raised it can file a 28-J letter within 10 days spelling out the point, and then you can respond to it within five days thereafter with a 28-J letter. Okay. One last point. There has been some discussion about what act is required within the one year into the waiver. I just refer to the court in our brief we cited, which is 18 CFR 4.34B53. It says the certifying agency is deemed to have waived the certification of Section 401A1 of the Clean Water Act if the certifying agency has not denied or granted certification by one year after the certifying agency received a written request for certification. The regulations have honed in on what the – That was in the brief. Thank you. Yes. And it's been more than one year since we applied. It's been about 18 months. Thank you. That was in the brief also. Thank you. If I may, I would like to clarify a few points and answer any questions that were made on this question. First, I want to reinforce the reality at our ask here that because 717RD1 does not require and does not define what order of action means, we're asking that this court follow the precedent in Bell and determine that order of action means a final order of action. And as part of that, consider that the entry water quality certificate that's been promulgated by MassDEP is not a final order of action. So that's the first point. The second point is that if there is a delay in this, and this gets to your question, there is a good reason to go to the District Court in – sorry, the Court of Appeals in D.C. Circuit to address that. The third point is there's no material harm to Tennessee to allow the MassDEP to continue its review. The notion that somehow the world will end if this review is constrained and if it's shut down I think is incorrect. There is a document – The D.C. procedure that you talked about, did that exist before Congress enacted the legislation that we're construing today? I don't know if it came into effect before 1341 or after. I'd have to check. The other point is that there is no harm to Tennessee if we allow MassDEP to continue its review. And I say that because to get to where they are, you have to agree or at least understand that the MassDEP 401 process is on critical path. If they don't get that, then they can construct, because that's really what they're suggesting. It's holding them up. But it's not. The FERC right now hasn't given them a notice to proceed. The FERC right now is looking at a number of factors on their checklist. And the certificate, as we put in our brief, specifically says that the authorization they have under their Certificate of Public Necessity is incipient. It really depends upon and is really reflective of what happens at the state level and what goes on in the 401 proceeding. So FERC is really not in a position right now to give them any authorization. They haven't got the 404 from the Army Corps, and it's proceeding. And I think as part of that, it's important to understand that we put this in our brief. There's a case, we cited it with respect to this, that there's no waiver in this case because there's no injury and there's no harm. And that really reflects that Tennessee is not injured because the document that was issued, which is not a final permit, but it still was material enough for the Army Corps to move forward with its process, and therefore, when it was submitted to FERC, for FERC to move forward. So while that's all happening, there's no prejudice to Tennessee at all with respect to what the state's doing. And because it's important, and I think it's really key to understand, we have a state process where they're trying to evaluate an impact on a water resource. They've taken a year, and they take a year in some other cases as well. And what Tennessee's asking to happen here is that be constrained and it not be allowed to continue so that they can evolve a full record, correct perhaps errors in the initial determination, maybe clarify it, maybe add some additional conditions. And then that would be submitted, as we heard from MassDEP's counsel, that would get submitted to the 404 Army Corps. And then that would go to FERC. So if the process was allowed to work the way we would like it to work and suggested, should MassDEP complete the permitting process, if there's changes in what they did in the interim certification, those changes get reflected and submitted to FERC. And in the meantime, FERC is not waiting for the 401 to be completed. Thank you, and thank you to all counsel. Thank you.